IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LARONDRICK LEWIS,<br><br>     *Plaintiff,*<br><br>**v.**<br><br>**FOUTS BROS., INC., and SMYRNA TRUCK AND CARGO LLC,**<br><br>     ***Defendants.*** | **CIVIL ACTION NO.**<br>**5:24-cv-00407-TES** |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Relying on the "reasonable accommodations" provision from Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C § 12112(b)(5)(A), Plaintiff Larondrick Lewis filed suit against his former employer, Defendant Smyrna Truck and Cargo, LLC. [Doc. 1, ¶¶ 1, 42]. Smyrna Truck, a wholly owned subsidiary of Defendant Fouts Bros., Inc., operates a 700,000 square foot facility out of Milledgeville, Georgia. [*Id.* at ¶ 19]; [Doc. 7-2, ¶¶ 1, 10]. At this facility, Smyrna Truck builds large commercial vehicles, commonly called "box trucks," for moving and delivery; tow trucks; and crane trucks. [Doc. 7-2, ¶¶ 1, 11]. For most of his employment, Plaintiff worked as a Quality Control Inspector, inspecting "boxes" as they came down the assembly line. [*Id.* at ¶¶ 3, 11]. Contending that his disability had nothing to do with his termination, Defendants moved for summary judgment on his sole ADA claim. [Doc. 1, ¶¶ 43–47]; [Doc. 7].

A.    **FACTUAL BACKGROUND**[1]

There are, of course, Plaintiff's job responsibilities as an inspector for Smyrna Truck, but before that, his military service comes into play. From December 2016 to May 2022, Plaintiff served in the Marine Corps, and his service took him to Japan. [Doc. 7-2, ¶ 6]; [Lewis Depo., pp. 8:13–15; 9:18–20]. While in Japan, he fell down a mountain sustaining a knee injury that required surgery. [Doc. 7-2, ¶¶ 6–7]; [Lewis Depo., p. 9:18–20]. Highly material to Plaintiff's ADA claim is the fact that this knee injury limited his ability to climb ladders.[2] [Doc. 7-2, ¶ 9]. As a result of this injury and other non-physical injuries Plaintiff sustained during his military service, he receives disability benefits. [*Id.* at ¶ 8].

Following his service as a Marine, he started working full-time for Smyrna Truck. [*Id.* at ¶ 2]. Initially, Plaintiff worked as a floor specialist technician—a job that didn't require him to "use [his] lower body." [Lewis Depo., pp. 10:21–22; 25:3–4]. About four months into the job, he received a promotion to become a Quality Control Inspector, and that was his job until his termination on May 3, 2024. [Doc. 7-2, ¶¶ 2, 4–

---

[1] Unless otherwise cited, the following facts come from Defendants' Statement of Undisputed Material Facts [Doc. 7-2] and are undisputed by Plaintiff.

[2] In Plaintiff's Response [Doc. 10-2] to Defendants' Statement of Undisputed Material Facts, his "response" to Defendants' statement in paragraph 9 is highlighted, but there is no indication whether the statement is admitted or denied. *See* [Doc. 10-2, ¶ 9]. When a fact "contained in the movant's statement which [is] not specifically controverted by specific citation to particular parts of materials in the record, [the proffered fact] shall be deemed to have been admitted, unless otherwise inappropriate." LR 56, MDGa. Thus, by operation of Local Rule 56 and Plaintiff's failure to controvert Defendants' proffered fact "by specific citation to particular parts of materials in the record," it is undisputed that Plaintiff's knee injury limits his ability to climb ladders. *Id.*

5]; [Lewis Depo., pp. 10:25—11:9]. For most of Plaintiff's time as an inspector, John Beall oversaw his work. [Doc. 7-2, ¶ 4]. In April 2024, however, Julie Lawson, who worked for Fouts Bros., as a Quality Engineer, received a promotion to Quality Control Manager. [Lawson Depo., pp. 10:18–19; 13:3–4; 13:20–22; 15:7–16]. From then on, Ms. Lawson took over Mr. Beall's duties. [*Id.* at p. 31:2–14]. This meant that Ms. Lewis was now Plaintiff's supervisor and that she and the former human resources manager—after discussions with Heather Edens, the executive vice president—were the ones who fired Plaintiff.[3] [Doc. 7-2, ¶ 5]; *see also* [Lawson Depo., pp. 12:10–18; 15:25—16:7; 20:5–25]. Now, what did Plaintiff's job entail?

Again, the job in this case is one where an assembly line worker helped build large box trucks. The process of building the "box" includes assembling the sidewalls and putting them together, assembling the flooring, wiring the lights, adding a roof, and mounting the completed "box" to the chassis of the truck. [Doc. 7-2, ¶¶ 14–15]. Plaintiff's "phase" "on the line" was inspecting the actual assembly and mounting of the "box." [*Id.* at ¶¶ 13, 17]; [Lawson Decl., ¶¶ 6, 9]; [Lawson Depo., p. 18:16–22]. Two other inspectors were tasked with "final inspection" at the end of the assembly line. [Doc. 7-2, ¶ 18]; [Lawson Decl., ¶ 9].

Inspectors, like Plaintiff, receive specific training on what to look for—meaning

---

[3] Although Ms. Edens wasn't present when Plaintiff was fired, the parties do not dispute that she, Ms. Lawson, and the former human resources manager were the decision makers. [Lewis Depo., p. 34:22–25]; [Lawson Depo., p. 29:5–17].

other assembly workers "on the line" who are tasked with different responsibilities, like a welder or an electrician, don't know what to look for. [Lawson Decl., ¶ 12]. As an inspector, Plaintiff was responsible for examining the rivets inserted into the sidewalls of the box; making sure there were no scratches on the panels; reviewing the flooring material to confirm it met the customer's requirements; looking at the roof bows, wiring, and measurements to ensure proper installation; verifying that the corner caps, bolts, caulking, and the roof were all properly installed; and checking the security of the bolts that mount the box to the truck's chassis. [*Id.* at ¶ 13]; [Lewis Depo., p. 15:8–18]; [Lawson Depo., p. 18:16–22]. While Plaintiff doesn't dispute that his ability to climb a ladder is limited, he does dispute the extent to which his "inspection" responsibilities required him to climb one at all. *See, e.g.*, [Doc. 10-2, ¶¶ 15, 24]. The reason for Plaintiff's dispute lies in how Mr. Beall, as opposed to Ms. Lewis, required him to perform his inspections.

On deposition, Plaintiff testified he couldn't recall ever having told Mr. Beall, or anyone to whom he reported, about his ability to climb ladders "because [Plaintiff] either had . . . somebody else" climb a ladder or he would "use [his] phone and zoom in" to make his inspections.[4] [Lewis Depo., pp. 16:7—19:9; 26:15–18]; *see also* [Doc. 7-2, ¶ 55]. If Plaintiff noticed a defect, he didn't have to fix it. [Lewis Depo., pp. 26:25—27:2].

---

[4] In a way, Plaintiff basically gave himself the accommodation he wanted without his employer's input or authorization.

All he had to do was "point it out." [*Id.* at p. 27:3–5]. Plaintiff, of course, is adamant that he could do his job "to the best of his ability" despite his knee injury and that if he couldn't do it, he would see if someone else could "help [him] out and do it." [*Id.* at pp. 14:18–21; 34:11–16]; [Lewis Decl., ¶ 7].

Since Ms. Lawson and the human resources manager were the ones who fired Plaintiff, what they knew about his knee injury is important. [Lawson Depo., pp. 12:10–18; 20:5–25]. When it comes to Ms. Lawson, Plaintiff testified that he didn't have a detailed conversation with her about his knee issues. [Lewis Depo., p. 32:4–6]. What he did discuss with her, though, was stomach issues. [*Id.* at p. 32:7–9]. During her deposition, easily enough, Ms. Lawson confirmed this. Ms. Lawson testified that "shortly after" she came to Fouts Bros., Mr. Beall told her that Plaintiff doesn't climb ladders because "he's got stomach ulcers." [Lawson Depo., pp. 22:17—23:17]. At that time, though, Plaintiff reported to Mr. Beall, not Ms. Lawson, so she says she "had no reason to really pay attention to what [Plaintiff] was doing." [*Id.* at pp. 23:21—24:2].

Now, shift to when Plaintiff reported to Ms. Lawson—effectively on April 8, 2024. [*Id.* at pp. 19:16—20:4]. Ms. Lawson testified that on either April 9 or April 10, 2024, Plaintiff told her that "he felt dizzy and unsafe to work," and she sent him home for the day. [*Id.* at pp. 21:14—22:1; 34:1–5]; [Lewis Depo., p. 41:8–24]. After a visit to the Veterans' Affairs Medical Center for his stomach issues, Plaintiff returned to work. [Lawson Depo., pp. 34:1—35:25]. Over the next couple of weeks, Plaintiff and Ms.

Lawson saw one another about twice a day. [*Id.* at p. 36:1–9]. While Ms. Lawson knew Plaintiff's job duties included climbing ladders, she states that during the time she was his supervisor, she never saw him climb a ladder. [*Id.* at pp. 24:4–6; 26:18–24]; [Lawson Decl., ¶ 15]. So, she met with him about it. [Lawson Depo., p. 27:4]. She asked whether the reason he couldn't climb ladders was related to his stomach issues. [*Id.* at p. 22:8–11]. Plaintiff told her that "he had scar tissue in his knees[,] and it hurt to climb." [*Id.* at pp. 22:12–14; 27:7–8]. Plaintiff then, after Ms. Lawson asked, told her that he didn't have any doctor's notes detailing any restrictions. [*Id.* at p. 27:8–10]. From there, Ms. Lawson told Plaintiff she wanted to see what could be done to accommodate him because this was the first time she had heard of a knee injury. [*Id.* at pp. 27:11–15; 29:20–24; 42:8–10]. When she met with human resources, she explained that it wasn't stomach issues that caused Plaintiff to "pretty much" stay away from climbing ladders, but it was because "he had issues with his knees." [*Id.* at p. 28:7–10]; [Lewis Depo., p. 25:14–19]. With human resources just as in the dark about Plaintiff's knee injury, they pulled his personnel file to see whether he disclosed it on his new-hire paperwork.[5] [Lawson Depo., pp. 28:11—29:1; 30:2–6]; *see also* [Doc. 7-2, ¶ 42]. He had not. [Lawson Depo., pp. 28:11—29:1].

When completing his Post-Offer Medical Questionnaire, Plaintiff circled "No"

---

[5] At some point, during what Plaintiff coins as "[t]he day . . . the whole spiel went down," the human resources manager apparently asked him whether he received any disability money for his knee injury. [Lewis Depo., pp. 33:25—35:20].

when specifically asked whether he had any injury to his knees or any surgeries.[6] [Lewis Depo., pp. 23:13—24:19]; *see also* [Doc. 7-2, ¶ 51]; [Doc. 7-11, pp. 88–89]. Despite Plaintiff's clear concession that he failed to disclose his knee injury, he testified that when he filled out his Post-Offer Medical Questionnaire, "[he] forgot" about his injured knees that are now so important. [Lewis Depo., p. 39:3–7]. So, when it came to why Plaintiff lost his job, Ms. Lawson testified, "[W]e . . . terminat[ed] him because he did not disclose that he had a previous injury." [Lawson Depo., pp. 47:20—48:1]. Ms. Lawson stressed that Plaintiff wasn't fired *because of* his previous injury but because he "did not disclose [it]."[7] [*Id.*]. In a word: for "integrity" reasons. [*Id.* at p. 48:2]; [Doc. 7-2, ¶ 58].

### B.    DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DECLARATIONS

Notwithstanding the fact that Plaintiff submitted his Declaration [Doc. 11] four days after his Response [Doc. 10], Defendants filed an Objection [Doc. 13] to the Court's consideration of proffered statements that either lack evidentiary support or directly contradict Plaintiff's deposition testimony. *See generally* [Doc. 13]. For example, in his

---

[6] Ms. Lewis says that the information on the Post-Offer Medical Questionnaire "helps determine whether an employee has the physical qualifications necessary to perform the job that has been offered" and ensures that employees aren't placed in positions that "might aggravate an existing condition or pervious injury." [Doc. 7-2, ¶¶ 49–50].

[7] On Plaintiff's separation notice, the human resources manager wrote that Plaintiff "has been let go for falsification of documents" and further explained that the falsification came to light when Plaintiff "disclosed . . . that he is a disabled veteran with knee problems." [Doc. 7-9, p. 2 (verbatim, Plaintiff's separation notice states: "EE has been let go for falsification of documents. EE disclosed on 05-03-2024 with his employer that he is a disabled veteran with knee problems.")].

Declaration, Plaintiff directly contradicted his deposition testimony without explanation, prompting the Court to rely on his deposition to assess whether a genuine issue of material fact exists such that summary judgment would be inappropriate. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Accordingly, the Court **SUSTAINS in part** Defendants' Objection regarding Plaintiff's Declaration as there were portions of his Declaration the Court considered in assessing whether a material fact exists in this case. [Doc. 13, pp. 2–6].

However, when it comes to some of the factual assertions Plaintiff offers in his Statement of Undisputed Material Facts [Doc. 10-1], they are either not supported by the citation provided or stand completely contradicted by his deposition testimony. For example, Plaintiff states it is "undisputed" that after he started reporting to Ms. Lawson, Mr. Beall told him that human resources was tracking him on his medical condition and that he couldn't be "let . . . go for medical reasons."[8] [Doc. 10-1, ¶ 47]. The

---

[8] As to Plaintiff's assertion that Mr. Beall warned him that human resources was "tracking" him, Defendants point out that this allegation, along with others relied upon by Plaintiff at summary judgment, are only contained in his Complaint. [Doc. 12, p. 6 n.2]; *see* [Doc. 1, ¶ 33]. The contents of a pleading cannot be relied upon to establish fact. *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 815 (11th Cir. 2013) ("Such statements by counsel in pleadings are not evidence."). Then, as to the statements concerning whether Defendants could terminate Plaintiff "for medical reasons," Plaintiff testified that was "in the context of [him] missing [several days] of work because of [his] stomach issues," not "in the context of any kind of knee injury." [Lewis Depo., pp. 39:13—40:10].

citation provided in support of this factual assertion, however, states, "On May 3, [Ms.] Lawson called me to HR's office[,] and she was accusing me that I can't perform my job duties by climbing ladders." [Lewis Decl., ¶ 6]. Not only do those two "assertions" not match, but Plaintiff testified the complete opposite in his deposition. There, Plaintiff unequivocally testified that Mr. Beall didn't tell him that human resources was tracking him. [Lewis Depo., p. 39:10–12]. Accordingly, in light of Defendants' Objection, the Court separated the wheat from the chaff when it comes to considering only factual allegations that are supported by the evidence in ruling on their summary-judgment motion.

The "evidence" Plaintiff relies upon to support the difference between Mr. Beall's and Ms. Lawson's requirements comes from an unsigned, and thus, unusable Declaration [Doc. 10-3] from Mr. Beall.[9] Mr. Beall allegedly states that he "did not want any of the quality control inspectors climbing any ladders," "especially, . . . tall A-frame ladders." [Beall Decl., ¶¶ 17–18]. Defendants, however, filed an Objection [Doc. 13] to Mr. Beall's statements since his Declaration is unsworn and unsigned. *See, e.g.,* [Doc. 10-3, p. 5]; [Doc. 13, p. 2]. Defendants are right to do so. "Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment." *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2024) (citation omitted). "An unsworn statement is

---

[9] During the pendency of this summary-judgment motion, Plaintiff never sought leave to file a signed declaration from Mr. Beall.

incompetent to raise a fact issue precluding summary judgment." *Id.* Since none of the statutory requirements for the exception to traditional affidavits sworn under oath are met, the Court **SUSTAINS** Defendants' Objection with respect to Mr. Beall's Declaration. *Id.* at 1347–48. Mr. Beall failed to "(1) date *and sign* the document, and (2) subscribe its content as 'true,' (3) under 'penalty of perjury,' (4) in substantially the above-quoted pattern language," so the contents of his Declaration cannot be considered. *Id.* at 1347 (citing 28 U.S.C. § 1746(2)) (emphasis added).

## C.   LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)); Fed. R. Civ. P. 56(c)(1)(A).[10] "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Further, where a party fails to address another party's assertion of fact as

---

[10] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact

undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2); *see also* n.2, *supra*.

However, "credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*,

477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for
> trial. Rather, on summary judgment, the district court must accept as fact
> all allegations the [nonmoving] party makes, provided they are sufficiently
> supported by evidence of record. So[,] when competing narratives emerge
> on key events, courts are not at liberty to pick which side they think is more
> credible. Indeed, if "the only issue is one of credibility," the issue is factual,
> and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

"[T]he judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson*, 477 U.S. at 249. The nonmovant's evidence is to be believed, and "all

justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]f a reasonable jury

could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary

judgment." *Sconiers*, 946 F.3d at 1263.

### D.    DISCUSSION

In his Response to Defendants' summary-judgment motion, Plaintiff argues that

their "assertion that [they] learned a couple of years later that [he] had a debilitating

knee injury that prevented him from performing the essential function of his job is pure fiction." [Doc. 10, pp. 1–2]. This argument, however, which is completely devoid of any citation to the record, misses the relevant issue before the Court. Defendants concede that the crux of Plaintiff's argument—that he was supposedly open about his knee issues to his supervisors prior to Ms. Lawson—"may or may not be true." [Doc. 12, p. 4]. However, the main inquiry with which the Court is concerned is whether Defendants fired Plaintiff *because of* his disability. With that, it must be remembered that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019). What an employer can't do when it comes to termination is fire an employee for a discriminatory reason. *Id.*

### 1.    <u>Plaintiff's Failure-to-Accommodate Claim</u>

Under the ADA, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). Further, the term "discriminate" includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can

demonstrate that the accommodation would impose an undue hardship on the operation of the business[.]" *Id.* at § 12112(b)(5)(A)). A qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." *Id.* at § 12111(8). Thus, an employee "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). If, however, an employee "is unable perform an essential function of his job, even with an accommodation, "he is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id.* (alteration adopted).

In 2007, the Eleventh Circuit observed that an employee bringing a failure-to-accommodate disability discrimination claim against an employer does not have to show disparate treatment—he does not have to show that his employer treated non-disabled employees differently. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007). In the failure-to-promote arena, an employer's failure to reasonably accommodate an employee's disability is, by itself, discrimination under the ADA if the employee is qualified and the operation of the employer's business would not suffer. *Id.* "[T]he very purpose of reasonable accommodation laws is to require employers to treat disabled individuals differently in some circumstances." *Id.* The ADA "requires

14

preferences in the form of 'reasonable accommodations' that are needed for those with disabilities to obtain the *same* workplace opportunities that those without disabilities automatically enjoy." *Id.* at 1263 (quoting *US Airways, Inc. v. Barnett*, 535 U.S. 391, 397–98 (2002)).

In 2008, "Congress amended the ADA's causal language to prohibit discrimination 'on the basis of disability' instead of 'because of' disability." *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192 (11th Cir. 2024). Despite the change from "because of" to "on the basis of," the Eleventh Circuit has decided that "the switch . . . did not . . . affect [the ADA's] but-for causation standard." *Id.* And, importantly, when it comes to the ADA, a plaintiff cannot proceed under the "motivating factor" standard. *Id.* at 1193. Thus, the Court's analysis is guided by whether "an adverse employment action would not have occurred but for . . . [P]laintiff's disability." *Id.* at 1192 (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir. 1996); and *Holly*, 492 F.3d at 1263 n.17).

Defendants state that it's unclear how Plaintiff plans to demonstrate intentional discrimination because of his disability. [Doc. 7-1, p. 8]. A plaintiff may use either direct evidence or circumstantial evidence, or both, to show intentional discrimination. *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). Out of an abundance of caution, Defendants address Plaintiff's options to proceed through a direct-evidence route as well as a circumstantial-evidence route by means of the well-known burden-shifting framework from *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973), or through a convincing

mosaic. [Doc. 7-1, pp. 8–18]; *see Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Given the contents of Plaintiff's Response, the Court addresses these options in somewhat of an unorthodox order. Normally, the Court would begin with a discussion on direct evidence, followed by a discussion on the circumstantial-evidence route and the two methods of proof that branch from that route. *See, e.g., Mathews v. Walmart*, No. 5:22-cv-00397-TES, 2024 WL 3905815, at *9 (M.D. Ga. Aug. 22, 2024); *Rynarzewska v. Corp. of Mercer Univ.*, No. 5:22-cv-00398-TES, 2025 WL 1082378, at *20–22 (M.D. Ga. Apr. 10, 2025). In this case, however, the Court finds that the analysis is best streamlined when flipped. So, first up is the "convincing mosaic" option, then the direct-evidence route, and last, the *McDonnell Douglas* burden-shifting framework.

a.      **Circumstantial Evidence Through a Convincing Mosaic**

Under the controlling forfeiture precedent of the Eleventh Circuit (to the extent it's followed), the Eleventh Circuit holds that a plaintiff forfeits the "convincing mosaic" way of inferring discriminatory intent "by failing to squarely present that issue in the [summary-judgment] briefing in the district court." *McCreight v. AuburnBank*, 117 F.4th 1322, 1342 (11th Cir. 2024) (Hull, J., concurring in part and dissenting in part with respect to the remaining panel judges' decision to not apply the Eleventh Circuit's forfeiture precedent) (citing *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273–74 (11th Cir. 2021)). In *Bailey*, the Eleventh Circuit disagreed with a plaintiff's assertion that he "squarely presented a 'convincing mosaic' argument to support his disparate-

treatment theory in his summary-judgment briefing in the district court." 992 F.3d at 1273. In that plaintiff's "response brief opposing [his employer's] [summary-judgment] motion before the district court, [he] cited the 'convincing mosaic' theory in connection with his general discussion of the law governing disparate-treatment claims." *Id.* Here, Plaintiff doesn't even mention the words "convincing mosaic" in his Response or elsewhere. *See generally* [Doc. 10]; [Doc. 10-1]; [Doc. 10-2]; [Beall Decl. (which the Court cannot consider)]; [Lewis Decl.]. To the extent Plaintiff hoped to prove his ADA claim through a convincing mosaic, the Court has not had fair notice through the briefing presented to it. *See McCreight*, 117 F.4th at 1342 (Hull, J., concurring in part and dissenting in part). "In short, [Plaintiff] forfeited any 'convincing mosaic' argument in support of his [ADA] claim." *Bailey*, 992 F.3d at 1274.

> **b.    Direct Evidence and Circumstantial Evidence Through the
> *McDonnell Douglas* Burden-Shifting Framework**

Plaintiff's Response with respect to Defendants' arguments regarding direct evidence and an application of the *McDonnell Douglas* framework fares no better. He completely failed to address either. In fact, Plaintiff filed his Response without a single citation to case law or any analysis whatsoever. All Plaintiff includes in his Response are factual assertions—some supported, some unsupported, some considered and some not, based on the Court's ruling on Defendants' Objection with respect to Mr. Beall's Declaration and Plaintiff's Declaration and Statement of Undisputed Material Facts. *See* Section B, *supra*. While Plaintiff's Response is only comprised of factual assertions

despite its "Memorandum of Law" title, he lands on the overall premise that Ms. Lawson was "bound and determined to unlawfully discriminate against [him]." [Doc. 10, p. 7].

Now, a lack of discussion from Plaintiff about direct evidence doesn't mean it doesn't exist on the record, and a lack of discussion on the canonical framework doesn't automatically usher in summary judgment on Plaintiff's ADA claim. *See Ismael v. Roundtree*, 161 F.4th 752, 759 (11th Cir. 2025). That said, however, Plaintiff's failure to address *any arguments* put forth by Defendants at summary judgment teeters on an abandonment of his ADA claim—which is, of course, his entire case.

From the Supreme Court, it is a well-settled principle of summary-judgment jurisprudence that if the nonmoving party fails "to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Further, the Eleventh Circuit has made clear that a party abandons grounds for relief by failing to address arguments raised by his adversary when he opposes a well-supported motion for summary judgment. *See Bulluck v. Newtek Small Bus. Fin., Inc.*, 808 F. App'x 698, 702 (11th Cir. 2020) (explaining that plaintiffs abandon claims "by failing to raise those arguments in response to . . . motions for summary judgment"). "Failure to offer any argument on an issue in a brief abandons that issue." *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009).

However, considering how much of a drastic measure it would be to outright dismiss Plaintiff's ADA claim just because he failed to address any of Defendants' clearly asserted arguments, the Court elects to take a different route. Plaintiff did, after all, by some minimum standard, "discuss" his ADA claim in opposing Defendants' summary-judgment motion and responding to their offered undisputed material facts. Thus, the Court will nevertheless address whether the record presents a genuine issue of material fact for Plaintiff's ADA claim. *See Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015) ("Nor, generally, does a party's failure to oppose a summary-judgment motion absolve the district court of its responsibility to consider the merits of the motion.").

To be completely clear, however, Plaintiff's failure to include any argument or analysis in response to Defendants' distinct propositions against his ADA claim gives the Court next to nothing to go on. It's not the Court's duty or obligation to cull through the record and build Plaintiff's case for him. *Johnson v. City of Fort Lauderdale, Fla.*, 126 F.3d 1372, 1373 (11th Cir. 1997) (noting that courts have no duty to "cull the record" to find support for a party's claims).

i.    *Direct Evidence*

In his Response to Defendants' summary-judgment motion, Plaintiff does not argue that he has any direct evidence of intentional discrimination. *See generally* [Doc. 10]. "Direct evidence of discrimination is evidence that 'reflects a discriminatory . . .

attitude correlating to the discrimination . . . complained of by the employee' and, 'if believed, proves the existence of a fact without inference or presumption.'" *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)). In the Eleventh Circuit, direct-evidence cases are reserved for "[o]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor[.]" *Id.*; *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 950 (11th Cir. 2023) (citing *Fernandez*, 961 F.3d at 1156). If discriminatory motive is merely just suggested by the statement, the statement is not direct evidence, it is circumstantial. *Fernandez*, 961 F.3d at 1156 (quoting *Wilson*, 376 F.3d at 1086).

In briefing, Plaintiff doesn't even grapple with Defendants' cautionary assertion that the human resources manger's inquiry about whether Plaintiff received disability payments from the military for his knee injury or what's written on his separation notice are not examples of direct evidence. [Doc. 7-1, p. 9]. To recap, the human resources manager, after learning of his knee injury, apparently asked Plaintiff whether he received any disability money for it. *See* n.5, *supra*; [Lewis Depo., pp. 33:25—35:20]. And then, on his separation notice, the human resources manager wrote that Plaintiff "has been let go for falsification of documents" and further explained that he "disclosed . . . that he is a disabled veteran with knee problems." *See* n.7, *supra*; [Doc. 7-2, ¶ 59]; [Doc. 7-9, p. 2].

In their direct-evidence discussion, Defendants argue that the human resources manger's question about disability benefits was "to determine how serious [Plaintiff's] knee injury was and how long [he] had known about [it]." [Doc. 7-1, p. 9]. Because, according to Defendants, if Plaintiff's knee injury "was serious enough" to receive disability benefits from the military, then it was significant enough for him to disclose on his Post-Offer Medical Questionnaire. [*Id.*]. Next, as to what's written on Plaintiff's separation notice, Defendants contend that the human resources manger's reason for why Plaintiff had "been let go" "merely explains *how* [Defendants] learned that Plaintiff had falsified information on his paperwork." [*Id.*]. At most, these two pieces of evidence suggest a discriminatory motive. So, Plaintiff cannot used them as direct evidence of disability discrimination. *Fernandez*, 961 F.3d at 1156 (quoting *Wilson*, 376 F.3d at 1086).

ii.    McDonnell Douglas *Burden-Shifting Framework*[11]

Absent direct evidence, a plaintiff can rely on circumstantial evidence presented through the burden-shifting framework from *McDonnell Douglas*: the employee's prima facie case, then the employer's non-discrimination reasons, and then the employee's opportunity to show pretext. 411 U.S. 802–04; *Ismael*, 161 F.4th at 759; *Akridge*, 93 F.4th at

---

[11] Under the controlling law of the Eleventh Circuit, the burden-shifting analysis applicable to employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is applicable to ADA claims. *Holly*, 492 F.3d at 1255 (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). That, of course, is the *McDonnell Douglas* burden-shifting framework.

1191; *Jenkins*, 26 F.4th at 1249. Generally speaking, to make a prima facie case for discrimination under the ADA, a plaintiff must show: (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination "on the basis of [his] disability." *Akridge*, 93 F.4th at 1191–92 (first citing *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023); and then quoting 42 U.S.C. § 12112(a)). To prevail on a narrower, sort of subset, ADA claim—a failure to accommodate—a plaintiff must demonstrate "that (1) [he] was a qualified individual with a disability; (2) [he] made a specific request for a reasonable accommodation; and (3) [his] employer . . . failed to provide a reasonable accommodation, or engage in the requisite interactive process in order to identify a reasonable accommodation." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020). As to the second element, "the employer's duty to provide a reasonable accommodation <u>is not triggered</u> unless a specific demand for an accommodation has been made by an employee." *Id.* at 1022 (alteration adopted).

To begin, even though Defendants do not dispute that Plaintiff "is disabled for the purposes of the ADA," they argue he cannot establish the last two elements of a prima facie case. [Doc. 7-1, p. 10]. It is undisputed that Plaintiff's knee injury limits his ability to climb ladders. *See* n.2, *supra*; [Doc. 7-2, ¶ 9]; [Doc. 10-2, ¶ 9]. So, according to Defendants, he's not qualified because he cannot perform "an essential function of his job as a Quality Control Inspector." [Doc. 7-1, p. 10]; [Doc. 7-2, ¶ 43]; *see also Davis*, 205 F.3d at 1305. Remember though, Plaintiff testified that he started as a floor specialist

technician, where "you don't really . . . use your lower body," but Ms. Lawson's deposition makes clear that she knew Mr. Beall promoted Plaintiff to the inspector position. [Lewis Depo., pp. 10:20–21; 25:2–5]; [Lawson Depo., pp. 41:13—42:3]. More than that, Ms. Lawson also knew, from Mr. Beall, that Plaintiff didn't climb ladders, but she understood that to be due to Plaintiff's stomach issues—not his knee injury. [Lawson Depo., pp. 22:17—23:17; 42:19–23]. Was Plaintiff qualified to be a floor specialist technician? Probably. But, when Ms. Lawson—who is a different supervisor than Mr. Beall—learned not about Plaintiff's knee injury but about the fact that he didn't disclose it, that put his employment in jeopardy. Given the reason Defendants say they fired Plaintiff, it's clear that his failure to disclose his knee injury spelled problems not for only his position as a Quality Control Inspector but for his employment with Smyrna Truck in general.

If an employee is legally disabled, he must specifically request an accommodation to trigger the employer's accommodation obligations. *D'Onofrio*, 964 F.3d at 1021 (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)). Of course, there are limits to the accommodations an employer is legally obligated to provide under the ADA. *Id.* "The key is 'reasonability,' meaning an employer is not required to accommodate an employee in any manner that the employee desires—or even provide that employee's preferred accommodation. *Id.* (citing *Stewart*, 117 F.3d at 1285–86). Here, there just isn't any admissible evidence that

Plaintiff ever made such a request when it comes to his knee injury. Under the ADA, an employer will not be liable for failure to accommodate if the employee is responsible for the breakdown of the interactive process. *Id.* (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam)).

Second, even if the Court were to assume Plaintiff could make a prima facie case of intentional discrimination "on the basis of" his disability, that would not end the analysis. *Akridge*, 93 F.4th at 1192. The burden would shift to Defendants to articulate some legitimate, nondiscriminatory reason for the adverse action. To this, Defendants' opening from their summary-judgment brief tells their reason quite plainly. "In this case, Plaintiff was not terminated because he [is] disabled; he was terminated because he **lied** about his physical limitations on his new-hire paperwork." [Doc. 7-1, p. 1]. Given this non-discriminatory reason, Plaintiff must show that it is pretextual.

The third portion of *McDonnell Douglas*'s burden-shifting framework presents a "plaintiff [with] the opportunity to demonstrate that [his] employer's proffered rationale is pretextual." *Ismael*, 161 F.4th at 759. Here, as the Court has already discussed, Plaintiff failed to put forth any argument in his Response, leaving the chances of his case to only factual contentions. Plaintiff made absolutely no effort to demonstrate pretext, and the Court will not do it for him. *See Johnson*, 126 F.3d at 1373.

In his Response, however, Plaintiff states, "[o]n May 3, 2024[,] [Ms.] Lawson called me back to the [human resources] manager['s] office stating I can't perform my

job duties[,] and I stated I can perform my job duties." [Doc. 10, p. 7]. To the extent this can be stretched as either a pretext-based argument or an assertion that a genuine issue of material fact exists, "the pretext inquiry centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head." *Akridge*, 93 F.4th at 1196 (quoting *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1218 (11th Cir. 2021)). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false[] and that discrimination was the real reason." *Id.* (quoting *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021)) (cleaned up). Here, the evidence is clear. When Plaintiff had, in fact, undergone a surgery and had an injury to his knee, he misled his employer when he circled "No" on his onboarding paperwork. [Lewis Depo., pp. 23:13—24:19]; *see, e.g.*, [Doc. 7-11, pp. 88–89]. Therefore, Defendants' proffered nondiscriminatory reason is not false.[12]

Moreover, as the Court discussed earlier and as the Eleventh Circuit has "made clear, an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Akridge*, 93 F.4th at 1195 (citation omitted). Courts "do not sit as a super-personnel department" tasked with reexamining an entity's business decisions.

---

[12] Moreover, the fact that Defendants worked with Plaintiff on his stomach issues and began looking for ways to accommodate him underscores that their proffered reason wasn't false.

*Id.* And, courts must be careful to avoid "analyz[ing] whether an employer's proffered reasons are prudent or fair." *Id.* These guideposts segue nicely into something the Court touched on before for ADA claims in the failure-to-promote arena. Recalling that earlier discussion, an employer's failure to reasonably accommodate an employee's disability is, by itself, discrimination under the ADA if the employee is qualified and the operation of the employer's business would not suffer. *Holly*, 492 F.3d at 1262.

While it's clear Plaintiff could not climb ladders and was thus not qualified to be a Quality Control Inspector (absent a requested reasonable accommodation), there still exists the question of whether Defendants could have accommodated him and his knee issues, rather than fire him. Plaintiff, again, does not advance any of this in his filings, but the fact that Mr. Beall promoted Plaintiff all the while knowing he couldn't climb ladders—because of his stomach issues—is irrelevant for how *Ms. Lewis* perceived Plaintiff's performance. He received a promotion from Mr. Beall, but whether Ms. Lawson saw Plaintiff as fit for that position is the relevant inquiry.[13] Again, it is Ms. Lawson's perspective that counts. *Akridge*, 93 F.4th at 1196 (citation omitted).

In her Declaration, Ms. Lawson stated a number of things related to Smyrna Truck's operations. First, she states that while Plaintiff "worked for Smyrna Truck,

---

[13] "[E]ven if an employer has voluntarily provided accommodations to the employee historically, that employer is not obligated to continue providing them and can discontinue such when they exceed what is legally required under the ADA." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020) (citing *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997)).

nearly 100% of the trucks were being re-worked after final inspection because of quality issues that were not found until final inspection." [Lawson Decl., ¶ 16]. "Currently, the re-work rate for trucks is closer to 20 percent" due in part to the fact that Smyrna Truck "now has a Quality Control Inspector . . . [who] is climbing ladders and finding errors" as the trucks work their way down the assembly line. [*Id.* at ¶¶ 17, 19]. Since it's not the Court's role to sit as a super-personnel department and discuss whether it thinks Defendants' decision to fire Plaintiff rather than reassign him to another position was fair, it turns to what it is required to do in this case. *Akridge*, 93 F.4th at 1195. That, of course, is to determine whether the summary-judgment record reveals a genuine dispute of material fact about whether Defendants discriminated against Plaintiff "on the basis of" his disability. *Akridge*, 93 F.4th at 1192; *see also Tynes*, 88. F.4th at 954 (Newsom, J., concurring).

While Plaintiff could surely have performed some aspects of a Quality Control Inspector, it is clear that a good many others he could not perform. *See Bivins v. Bruno's, Inc.*, 953 F. Supp. 1558, 1562 (M.D. Ga. 1997), *aff'd* 247 F.3d 245 (11th Cir. 2001). "It would be perverse to force employers to keep people in jobs that include a large number of duties the employees can no longer perform without help." *Id.* And, when it comes to needing help to carry out his job duties, Plaintiff has made abundantly clear— he needed it. [Lewis Depo., pp. 14:18–21; 34:11–16]; [Lewis Decl., ¶ 7]. With passage of the ADA, Congress "intended to prevent discrimination against people who could

perform the job [without an] unduly burdensome accommodation of their disability." *Bivins*, 953 F. Supp. at 1562 (citing 42 U.S.C. § 12101(b)). The ADA was not intended to force employers "to subsidize disabled people by keeping them in their paid positions while still having to hire someone else to actually do their jobs." *Id.*

At bottom, Plaintiff cannot prove intentional discrimination through direct evidence or the use of the *McDonnell Douglas* burden-shifting framework. That framework, however, was "never was intended to be[] the *sine qua non* for a plaintiff to survive a [summary-judgment] motion in an employment discrimination case." *Lockheed-Martin Corp.*, 644 F.3d at 1328. In *Lockheed-Martin Corp.*, the Eleventh Circuit held that a "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Ismael*, 161 F.4th at 760 (quoting *Lockheed-Martin Corp.*, 644 F.3d at 1328); *see also Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019); *Tynes*, 88 F.4th at 946–47. A "triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Ismael*, 161 F.4th at 760 (quoting *Lockheed-Martin Corp.*, 644 F.3d at 1328).

The convincing mosaic method of proof heeds the directive that "[a] plaintiff must be afforded the opportunity to confront [his] burden of proof head-on, if [he] so chooses." *Id.* Here, through the virtually empty contents of his Response, Plaintiff, as

discussed above, forfeited his opportunity to directly create an inference of

discrimination "shorn of all [the] *McDonnell Douglas* prophylaxis." *Ismael*, 161 F.4th at

760 (quoting *Tynes*, 88 F.4th at 953 (Newsom, J., concurring)). By choosing not to, for

lack of better phrasing, meet Defendants' arguments "head-on," Plaintiff forfeited his

opportunity to present a "convincing mosaic" of evidence that could raise an inference

that his disability was a but-for cause of termination. *Akridge*, 93 F.4th at 1197; *see also*

Section D(1)(a), *supra*. Even though Plaintiff fails to demonstrate pretext—be it through

*McDonnell Douglas* or a convincing mosaic—there is not "enough evidence for a jury to

find for [Plaintiff] on the ultimate question of discrimination." *Ismael*, 161 F.4th at 763;

*Tynes*, 88 F.4th at 946–47 ("A 'convincing mosaic' of circumstantial evidence is simply

enough evidence for a reasonable factfinder to infer intentional discrimination in an

employment action—the ultimate inquiry in a discrimination lawsuit.") (citing *Jenkins*,

26 F.4th at 1250).

### E.    <u>CONCLUSION</u>

Accordingly, summary judgment in favor of Defendants is appropriate on

Plaintiff's ADA claim, and the Court **GRANTS** their Motion for Summary Judgment

[Doc. 7]. *See Ismael*, 161 F.4th at 763 ("[W]e hold that summary judgment should not be

granted for failure to demonstrate pretext unless it also 'reflects a failure to put forward

enough evidence for a jury to find for [a] plaintiff on the ultimate question of

discrimination' . . . .") (quoting *Tynes*, 88 F.4th at 947). The Court **DIRECTS** the Clerk of

Court to **ENTER** Judgment in favor of Defendants and **CLOSE** this case.

     **SO ORDERED**, this 28th day of January, 2026.

S/ *Tilman E. Self, III*
                                       
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**